## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Arroyo-Torres, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> González-Méndez, *et al.*, <br><br> Defendants. | **Civil No. 14-1474 (SEC)** |

## OPINION & ORDER

Pending before the Court is Defendant SIMED's Motion for Summary Judgment. Docket # 41. For the reasons that follow, this motion is **DENIED**.

### I.   Background

Paula Torres-Rosa (Torres) underwent a total replacement of her right knee in the Auxilio Mutuo hospital on June 12, 2012. Per her admissions records, Torres had a diagnosis of diabetes and high blood pressure. She was later transferred to the Millennium Institute for Advanced Nursing Care ("Millennium") for recovery and physical therapy. During her stay at the facility, Millennium's nurses noted that Torres was sleepy, dizzy and disoriented. Her family members made similar observations during their visits. A couple of weeks after her surgery, Torres' condition took a turn for the worse. Although her husband rushed her to the emergency room, it was already too late. Torres passed away on June 23, 2012.

Several months later, Torres' children, Bethzaida and Josue Arroyo-Torres (collectively, "Plaintiffs"), retained an attorney and began investigating the circumstances of their mother's death. Although they also retained the services of a

physician to render a report on this matter, the same was not ready within the one-year time limit provided by Puerto Rico law to file a tort suit. Thus on June 7, 2013, with the purpose of tolling the statute of limitations, Plaintiffs made an extrajudicial claim to Millennium and its treating physician. See Docket # 44-2 at ¶ 6. Importantly, Plaintiffs did not direct any extrajudicial claim to SIMED because they were allegedly unaware at that time that SIMED was Millennium's insurer. Id.

Neither Millennium nor the treating physician answered Plaintiffs' letter. Thus, on June 4, 2014, Plaintiffs filed this malpractice suit against Millennium and the physician. The suit did not name any insurance company under a fictitious name. Shortly thereafter, on August 6, 2014, Millennium sent Plaintiffs a letter stating that Millennium had filed for bankruptcy. See Docket # 44-4.[1] The letter further informed Plaintiffs that Millennium was insured by SIMED, and that SIMED had been duly notified regarding their claim.[2]

In response to that letter, Plaintiffs elected to drop their claims against Millennium and the treating physician. See Docket # 44-4. On the same date, Plaintiffs amended their complaint as a matter of right to reflect the dismissal, and added SIMED as a new defendant. The amended complaint specifically alleged that Plaintiffs were bringing "a direct action under Puerto Rico law against the Defendant SIMED." See Docket # 8 at ¶ 19.

After the close of discovery, the Court held a consolidated case management, pretrial and settlement conference. The minutes of that conference reflect that while the parties agreed to settle this case in principle for the full amount of the insurance policy, SIMED would be allowed to present a dispositive motion on grounds that Plaintiffs' claims were time-barred. See Docket # 40. For the reasons stated below, the

---

[1] Local Rule 5 requires that all documents submitted must be translated into the English language. In the interest of efficiency, and because SIMED previously indicated it would settle this case if its motion for summary judgment were denied, the Court shall waive this requirement here. However, if an appeal is taken from this opinion, the parties must submit certified translations of all documents on the record that are not in the English language.

[2] It is not clear whether the letter refers to Plaintiffs' extrajudicial claim or their lawsuit.

Court finds that SIMED's time-bar defense is foreclosed. The motion for summary judgment is therefore denied.

## II. **Analysis**

Malpractice claims under Puerto Rico law are subject to a one-year statute of limitations. See Article 1868 of the Puerto Rico Civil Code, P.R. Laws Ann. t. 31, § 5298. Under the "cognitive theory of accrual," this limitations period begins to run once the injured party knows two things: 1) the harm suffered; and 2) who caused the harm. Vera Morales v. Bravo Colón, 2004 TSPR 30 (P.R. Feb. 27, 2004), P.R. Offic. Trans.

Article 1873 of the Puerto Rico Civil Code allows the prescriptive period to be tolled in any of the following ways: 1) by sending an extrajudicial claim to the debtor; 2) by filing a judicial claim against the debtor; or 3) by an act of acknowledgement of debt by the debtor. P.R. Laws Ann. t. 31, § 5303. Further, under Article 1874, the tolling of this period against one defendant also tolls the period against any other defendant who is jointly and severally liable – that is, liable *in solidum* – with the first. See P.R. Laws Ann. t. 31, § 5304.

Under this framework, it is clear – and uncontested – that the prescriptive period on the tort action began to run on the date of Torres-Rosa's death; that is, on June 23, 2012. Thus, because Plaintiffs' sent their extrajudicial claim against Millennium and the treating physician before that date, they successfully tolled their claim against those entities. But therein lies the rub. As mentioned before, Plaintiffs' did not send any extrajudicial claim against SIMED, and the record does not reflect that SIMED was ever notified of the letter sent to Millennium. It is also uncontested that Plaintiffs' amended complaint naming SIMED was filed more than one year after Torres-Rosa's death. Under these circumstances, SIMED argues that Plaintiffs' direct action must be dismissed as time barred.

The issue boils down to whether Plaintiffs' extrajudicial claim tolled the statute of limitations on the direct action against the insurer, where Plaintiffs directed their

letter exclusively against the insured, and did not raise any claim against the insurer. In their briefs, the parties center on whether SIMED should be treated as a <u>joint tortfeasor</u> for purposes of determining whether the extrajudicial claim brought against the latter would have tolled the statute of limitations against the former. To the extent that the parties' arguments depend on that characterization – which is evident in their many references to <u>Fraguada Bonilla v. Hospital Auxilio Mutuo</u>, 186 D.P.R. 365 (2012) (distinguishing between the prescriptive effects of perfect and imperfect solidarity in the context of joint tortfeasors) – they are inapposite.

As Professor José Julián Álvarez González rightly notes, an insurer cannot be considered a joint tortfeasor for the simple reason that the insurance company does not participate in the tortious conduct. As a result, the legal relationship between the insurer and the insurance company is not a matter of "solidarity" as understood by the case law interpreting Puerto Rico's general tort statute. Rather, this relationship is a contractual one "whereby the insurer has agreed to defend the insured and pay a claim or judgment to a certain amount." J. J. Álvarez González, <u>Responsabilidad Civil Extracontractual</u>, 78 Rev. Jur. U.P.R. 457, 505 (2009) (translation supplied); <u>see also</u> J. J. Álvarez González, <u>Responsabilidad Extracontractual</u>, 62 Rev. Jur. U.P.R. 903, 934 (1993). The Court adds that in virtually every case, this contractual relationship predates the tort.[3]

For this reason, the question of whether the tolling of a claim against the tortfeasor also tolls a claim against its insurer must be analyzed in the context of the contractual relationship described above. To do so, it is essential to understand the basis on which an action against the insurer may be brought under Puerto Rico law. In particular, the Puerto Rico Insurance Code provides that an

---

[3] Of course, it is also possible that the parties specifically stipulated that the insurer would be solidarily liable for the damages caused by the insured. That alone would settle this matter in favor of Plaintiffs. But the parties have not provided the insurance contract at issue, and SIMED expressly denies that the contract contains such a provision.

> insurer issuing a policy insuring any person against loss or damage through legal liability for bodily injury, death, or damage to property of a third person, shall become liable whenever a loss covered by the policy occurs, and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured of or upon any final judgment against him arising out of such occurrence, nor shall it depend upon said judgment.

See Puerto Rico Insurance Code, § 20.010, P.R. Laws Ann. t. 26, § 2001. The Insurance Code further provides that an "individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly." Id. at § 20.030(1), P.R. Laws Ann. t. 26, § 2003(1) (emphasis added). This direct action is ostensibly the path Plaintiffs chose here. Finally, the Insurance Code provides another option: "[i]f the injured party brings suit against the insured alone, it shall not be deemed to deprive him of the right, by subrogation to the rights of the insured under the policy, to maintain an action against and recover from the insurer after securing final judgment against the insured." Id. at § 20.030(3).

It is clear, then, that an injured party has a menu of legal options against the tortfeasor and the insurer, all geared towards facilitating the injured party's access to relief. Indeed, that was the intent of the Puerto Rico Legislature when it approved those particular amendments in 1957. See e.g. Trigo v. The Travelers Ins. Co., 91 D.P.R. 868 (1965).

In spite of this, a line of federal district court cases hold that a direct action against the insurer is not tolled by bringing a claim against the insured. These courts essentially rest their holdings on two Puerto Rico decisions. First, in Ruiz v. New York Dept. Stores, 146 D.P.R. 353, 369–370 (1998), the Puerto Rico Supreme Court clarified that the direct action against the insurer was separate, distinct, and independent from the civil action against the insured. See also Trigo v. Travelers Ins.

Co., 91 D.P.R. 868 (1965). Later, in Ruiz-Millan v. Maryland Cas. Co., the Puerto Rico Supreme Court held that since both actions "have the same origin and since both depend on the same evidence," there is "no justification to establish different periods of prescription" for each. Ruiz-Millan v. Maryland Cas. Co., 101 D.P.R. 249, 1 P.R. Offic. Trans. 342 (P.R. Mar. 13, 1973). From these two statements, the federal courts reach the conclusion that the commencement of an action against the insured does not toll the statute of limitations against the insurer. According to these decisions, the direct action against the insurer must be tolled separately to the action against the insured. See e.g. Santiago-Rivera v. Royal Ins. Co. of Puerto Rico, 613 F. Supp. 121, 123 (D.P.R. 1985) summarily aff'd, 782 F.2d 1025 (1st Cir. 1985); C.A. Seguros Orinoco v. Naviera Transpapel, C.A., 677 F. Supp. 675 (D.P.R. 1988); Rogatz v. Hosp. Gen. San Carlos, Inc., 89 F.R.D. 298, 299 (D.P.R. 1980); but see Torres Vazquez v. Commercial Union Ins. Co., 367 F. Supp. 2d 231, 240 (D.P.R. 2005) (holding that a timely suit against the insured tolled the statute of limitations against the insurer, but based on the premise that the insurer and the insured were "joint tortfeasors").

But this conclusion is flawed for several reasons. The first is that in Ruiz-Millan, the Puerto Rico Supreme Court did not have a tolling argument before it. The court expressly stated that it would review only "whether the prescriptive term fixed to exercise the action brought is of one year (art. 1868 of the Civil Code) or fifteen years (art. 1864 of the Civil Code)." Id. As a result, this case does not set forth any rule of decision concerning the issue under review here.

Second, this result seems contrary to common sense. Even if the direct action against SIMED had expired, Plaintiffs could still reinstate their suit against the tortfeasors and obtain a judgment against them. In that case, by virtue of section 20.030(1) of the Insurance Code, Plaintiffs could bring suit against SIMED for the recovery of that judgment. To find that one action is time barred while the other is not would have the incongruous and inequitable effect of prolonging litigation for

"technical" reasons, which is directly contrary to the intent of the Puerto Rico Legislature in its amendment of that section of the Insurance Code. See Trigo v. The Travelers Ins. Co., 91 D.P.R. at 873.

Along the same vein, all but one of these cases ignore the Puerto Rico Supreme Court's holding in Barrientos v. Gobierno De La Capital, 97 P.R.R. 539 (1969), cert. denied, 400 U.S. 866 (1970). In that case, one of the plaintiffs sued the alleged tortfeasor within the one-year prescriptive period. Months later, and after the prescriptive period had expired, the plaintiff amended his complaint to add the tortfeasor's insurance company. In rejecting the insurance company's time-bar argument, the Puerto Rico Supreme Court ruled as follows:

> With respect to the defense of prescription of [the insurance company], it suffices to refer to [§ 20.030(3)] of the Insurance Code, […] which recognizes plaintiff's right to bring suit against the insurer even after securing final judgment against the insured. This means that in the case at bar the cause of action against American Surety Co. is still on time, although more than ten years have elapsed since the complaint was amended to join it as defendant.

See Id. at 562. This settles the matter. In no uncertain terms, the Puerto Rico Supreme Court squarely held that a claim against the insured party has the effect of tolling the statute of limitations for bringing a direct action against the insurer. *A fortiori*, since an extrajudicial claim has the same effect as a judicial claim for purposes of interrupting a prescriptive period, the Court must conclude that the extrajudicial claim against Millennium had the effect of tolling the prescriptive period against SIMED.

One of the federal cases cited above recognizes that Barrientos allows an "amendment adding an insurer as defendant [to proceed] more than a year after the occurrence of the damages." C.A. Seguros Orinoco v. Naviera Transpapel, C.A., 677 F. Supp. 675, 679 (D.P.R. 1988). However, the district court in Naviera declined to follow this precedent stating that "[t]hese two bare sentences coming at the end of a long, at times confusing opinion are not persuasive enough to warrant disregard of the

subsequently and contrarily decided cases previously mentioned." Naviera Transpapel, C.A., 677 F. Supp. 675, 679 (D.P.R. 1988).

The Court disagrees. It is bedrock that in diversity cases, the substantive rule of decision is provided by state law and jurisprudence. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938); see also C.I.R. v. Bosch's Estate, 387 U.S. 456, 465 (1967). In stating that the Barrientos case was not "persuasive" enough in light of the subsequent and contrarily decided federal cases, the Naviera court got it exactly backward. It is not for the Court to pass judgment on whether the rule of decision provided by the Puerto Rico Supreme Court on an issue of state law is correct. See Alejandro-Ortiz v. Puerto Rico Elec. Power Auth. (PREPA), 756 F.3d 23, 27 (1st Cir. 2014) (citing Daigle v. Me. Med. Ctr. Inc., 14 F.3d 684, 689 (1st Cir. 1994) (When sitting in diversity, the Court is "absolutely bound by a current interpretation of that law formulated by the [Commonwealth's] highest tribunal.")). Therefore, the Court finds that Plaintiffs' extrajudicial claim against Millennium tolled their direct action against SIMED as the insurance company.

The Court further finds that the First Circuit's decision in Tokyo Marine and Fire Ins. Co., Ltd. v. Perez & Cia supports this result, albeit from a slightly different angle. 142 F.3d 1 (1998). In that case, Mitsubishi stored a shipment of cars in a harborside lot owned by a local company, Perez & Cia. At some point during their stay in the lot, the cars were damaged by a cloud of paint overspray coming from a dry dock adjacent to the lot.

Within one year of the date the damage to the vehicles had been discovered, Mitsubishi's insurance company, Tokyo, sent a letter to Perez and Cia's insurance company, UAC. At some point thereafter, but outside the one-year term, Tokyo brought suit against the lot owner, but neglected to join UAC. Examining an issue of first impression at the state court level, this Court dismissed Tokyo's claims as time barred. On appeal, Tokyo argued that the extrajudicial claim sent to the insurance company tolled the action against the insured. The First Circuit reversed, predicting

that the "Puerto Rico Supreme Court would hold that insured defendants and their insurance companies are solidarily liable for the acts of their insured." Id. Although the situation here is the exact opposite, as the extrajudicial claim was sent to the insured party and the lawsuit was later brought against the insurer, the *ratio* of the Tokyo decision is squarely on point. We briefly explain it below.

Puerto Rico law recognizes that solidarity arises either by operation of law, or by contract. Because Tokyo Marine did not argue that the solidarity between the lot owner and the insurance company was contractual in nature, the inquiry in Tokyo was reduced to the following: "whether the liability of an insurer for the harm caused by its insured can be described as solidary liability." Id. at 6 (emphasis added). The First Circuit unearthed that source of solidarity in the Puerto Rico Insurance Code: "As in the case of joint tortfeasors, the liability imposed by the Insurance Code upon insurers is co-extensive with that of their insured, up to the limits of the policies in question." Id. (emphasis added).[4] Consequently, because UAC was solidarily liable with the lot owner, the extrajudicial claim made by Tokyo tolled the statute of limitations as to both.[5] Id.; see also Article 1874 of the Puerto Rico Civil Code, PR. Laws Ann. t. 31, §

---

[4] In reaching this result, the First Circuit cited the Puerto Rico Supreme Court's decision in Arroyo v. Hosp. La Concepción, 130 D.P.R. 596 (1992). At first blush, this might seem problematic because the Puerto Rico Supreme Court later overruled Arroyo in Fraguada. But closer inspection reveals that the First Circuit's prediction did not rest at all on the holding overruled by Fraguada. Specifically, the Tokyo court looked to Arroyo because it was, at the time, "the only case in which the Supreme Court of Puerto Rico [had] explicitly held that a statute had imposed a variety of solidary liability." The First Circuit then determined that another statute, the Puerto Rico Insurance Code, provided a similar source of solidarity between a tortfeasor and the insurance company. It is also worthwhile to note that Fraguada does not stand for the proposition that joint tortfeasors are not solidarily liable. Rather, and solely with respect to Puerto Rico's general tort statute, Fraguada holds that Article 1874 of the Civil Code – which provides that the interruption of a cause of action against one defendant tolls the action against all defendants solidarily liable with the first – does not apply in the context of joint tortfeasors. Thus, Fraguada does not disturb the First Circuit's observation that solidarity under Puerto Rico law may arise by operation of law. And, more importantly, it does not foreclose the First Circuit's conclusion that the Insurance Code provides an adequate source of solidarity here.

[5] A keen reader may observe that the statutory source of insurance-company liability is different from that of its insured. Regardless, "[s]olidarity may exist, even though the creditors and debtors are not bound in the same manner, and for the same periods and under the same conditions." Tokyo, 142 F.3d at 6, citing Article 1093 of the Puerto Rico Civil Code, P.R. Laws Ann. t. 31, § 3104.

5304 (providing that the interruption of the prescriptive term as to one debtor serves to toll the period as to any other debtor that is solidarily liable with the first).

By virtue of the Insurance Code, SIMED is solidarily liable for the harm allegedly inflicted by its insured, Millennium, upon Plaintiffs. Since the extrajudicial claim sent to Millennium tolled the statute of limitations as to all solidarily liable defendants, Plaintiffs' claim against SIMED is timely.

The Court adds that, in the end, this result is arguably more equitable than what happened in Tokyo. This is because the scope of liability of the tortfeasor is always equal to, or greater than, that of the insurer due to the limits of the insurance policy. By tolling the claim against the tortfeasor in this case, Plaintiffs may seek relief against the insurance company up to the limit of the insurance policy. In Tokyo, by contrast, the plaintiff tolled the statute of limitations against the insurance company. In theory, this would allow the plaintiff to bring suit against the tortfeasor beyond the limits of the insurance policy in question, even though that portion of damages could never be claimed against the insurance company in the first place.

### III. Conclusion

In light of the foregoing, the Court holds that since Plaintiffs' complaint was timely filed in light of their extrajudicial claim, the amendment to add SIMED as Millennium's insurance company was also timely.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of February, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge